**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| AHLSTROM RHINELANDER LLC, a Delaware limited liability company; AHLSTROM NA SPECIALTY SOLUTIONS HOLDINGS INC., a Delaware corporation, and AHLSTROM NA SPECIALTY SOLUTIONS LLC, a Delaware limited liability company;<br><br>Plaintiffs,<br><br>v.<br><br>COLONY INSURANCE COMPANY, a Virginia corporation;<br><br>Defendant. | Case No. 3:24-cv-726 |

# PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT REGARDING DEFENDANT COLONY'S BREACH OF ITS DUTY TO DEFEND

# TABLE OF CONTENTS

Page


**FACTUAL BACKGROUND** .......... 1

**LEGAL STANDARD** .......... 2

**ARGUMENT** .......... 3

I. The DNR Letter Is a "Claim" for Potentially Covered "Loss" Under the Policy. .......... 4

II. The DNR Letter Is a Related "Claim" Deemed First Made During the Policy Period. .......... 5

III. The DNR Letter Triggers Potential Coverage Under Three Insuring Agreements. .......... 6

A. Insuring Agreement E: Non-Owned Disposal Site Liability. .......... 6

B. Insuring Agreement B.2: New Pollution Conditions Liability. .......... 7

C. Insuring Agreement F: Transportation Pollution Liability. .......... 7

IV. Colony Cannot Meet Its Heavy Burden to Establish Any Exclusion Applies Such That There Is No Possibility of Coverage for the DNR Letter Under the Policy. .......... 8

A. The DNR Letter Alleges, And Thus Supports the Inference, That the Farmland Sites Were Properly Licensed to Receive Waste from the Rhinelander Site. .......... 8

B. The DNR Letter's Allegations Establish the Possibility that Pollution Conditions First Commenced After the Policy's Retroactive Dates. .......... 9

C. Colony Cannot Prove the Known Pollution Conditions Exclusion Applies to Avoid Its Duty to Defend, Particularly Where Permits Were Issued. .......... 10

**CONCLUSION** .......... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Eng'g, Inc. v. Indus. Air Power, LLC*,
828 N.W.2d 565 (Wis. Ct. App. 2013) ........ 8, 10

*Frost ex rel. Anderson v. Whitbeck*,
654 N.W.2d 225 (Wis. 2002) ........ 8

*Day v. Allstate Indem. Co.*,
798 N.W.2d 199 (Wis. 2011) ........ 3, 8, 10

*EMCASCO Ins. Co. v. N. Metal Fab., Inc.*,
715 F. Supp. 3d 1103 (W.D. Wis. 2024) (Conley, J.) ........ 2

*Fireman's Fund Ins. Co. of Wis. v. Bradley Corp.*,
660 N.W.2d 666 (Wis. 2003) ........ 2, 3, 7

*Johnson Controls, Inc. v. Emps. Ins. of Wausau*,
665 N.W.2d 257 (Wis. 2003) ........ 4

*Johnson Controls, Inc. v. London Mkt.*,
784 N.W.2d 579 (Wis. 2010) ........ 6

*Konell Constr. & Demolition Corp. v. Valiant Ins. Co.*,
No. CV03-412-MO, 2006 WL 1360956 (D. Or. May 15, 2006) ........ 10

*Liebovich v. Minn. Ins. Co.*,
728 N.W.2d 357 (Wis. Ct. App. 2007) ........ 7, 10

*Nowacki v. Federated Realty Grp., Inc.*,
36 F. Supp. 2d 1099 (E.D. Wis. 1999) ........ 2

*Scot. Guarantee Ins. Co. v. Dwyer*,
19 F.3d 307 (7th Cir. 1994) ........ 3

*Tokio Marine Specialty Ins. Co. v. Altom Transp., Inc.*,
618 F. Supp. 3d 791 (N.D. Ill. 2022), *aff'd*, No. 23-1443, 2024 WL 808059
(7th Cir. Feb. 27, 2024) ........ 8

*W. Bend Mut. Ins. Co. v. Ixthus Med. Supply, Inc.*,
923 N.W.2d 550 (Wis. 2019) ........ 3

*Washington v. Krahn*,
440 F. Supp. 2d 911 (E.D. Wis. 2006) ........ 3

*Water Well Sols. Serv. Grp., Inc. v. Consol. Ins. Co.*,
881 N.W.2d 285 (Wis. 2016) .......... 3

**Statutes**

Wisconsin's Spills Law (Wis. Stat. ch. 292) .......... 2, 9

**Rules of Procedure**

Fed. R. Civ. P. 56(a) .......... 2

Plaintiffs ("Ahlstrom") respectfully submit this supplemental brief to address Defendant Colony Insurance Company's ("Colony") duty to defend Ahlstrom under Premises Environmental and Remediation Liability Policy No. PRL4267109 (the "Policy") in connection with a letter demand from the Wisconsin Department of Natural Resources ("DNR").[1] As explained below, under the Policy's plain language the DNR letter is a "**claim**,"[2] seeks "**cleanup costs**" that are expressly covered "**loss**," and triggers potential coverage under at least three Insuring Agreements; and because Colony cannot definitively establish that any Policy exclusion applies, Ahlstrom is entitled to a defense. Thus, for the same reasons set forth in Ahlstrom's summary judgment briefing (ECFs 28, 33, 37)—and for the additional reasons stated herein—Colony breached its duty to defend, and that breach is ongoing.

## FACTUAL BACKGROUND

The Policy, issued to Ahlstrom for the period from April 7, 2021 to April 12, 2024, provides that Colony "will have the right and duty to defend the **insured** against a **claim** to which this insurance applies." PFOF[3] ¶¶ 5–8, 28. The Rhinelander Site, a paper mill,[4] is a "**scheduled site**." *Id.* ¶ 11.

On September 26, 2025, DNR sent a letter (the "DNR Letter") to Ahlstrom regarding "Reported Contamination in the Town of Stella, Oneida County, Wisconsin." *See* Ahlstrom's First Amended Complaint ("FAC") (ECF 51) ¶¶ 5, 39; Ex. C to FAC (ECF 51-3). The DNR Letter states that a groundwater sample collected from the Town of Stella in September 2022 contained elevated PFAS concentrations, and that subsequent investigation "found widespread PFAS contamination in . . . soil, groundwater, surface water, and sediment." Ex. C to FAC (ECF 51-3) at 1; FAC ¶ 40.

The DNR Letter further states that DNR's Wastewater Program records document that industrial **waste** from the Rhinelander Site has been applied via landspreading on multiple agricultural

[1] Prior briefing addressed Colony's duty to defend the *Rougeau* action (*Rougeau et al. v. Ahlstrom Rhinelander, LLC et al.*, No. 3:23-cv-546, filed Aug. 9, 2023). *See* ECFs 23–26 (Colony's Motion), 27–30 (Ahlstrom's Motion).
[2] Bolded terms herein are defined in the Policy. Ex. A to FAC (ECF 51-1).
[3] Ahlstrom's Proposed Findings of Fact in Support of Summary Judgment (ECF 29) are cited as "PFOF."
[4] *See* PFOF ¶¶ 40–43.

fields in the Town of Stella on several occasions over a period of years dating back to at least 1996, and that soil samples from landspread areas showed PFAS concentrations "orders of magnitude greater" than in areas with no landspreading history. Ex. C to FAC (ECF 51-3) at 2; FAC ¶ 42.

The DNR Letter identifies Ahlstrom as a "responsible party" under Wisconsin's Spills Law (Wis. Stat. ch. 292) and directs Ahlstrom to investigate and remediate the contamination—including hiring environmental consultants, submitting investigation work plans, performing field investigations, and providing progress reports until case closure. Ex. C to FAC (ECF 51-3) at 2–5; FAC ¶¶ 44–46. The DNR Letter thus seeks to hold Ahlstrom responsible for costs of investigation, removal, treatment, remediation, neutralization, and monitoring of PFAS contamination. FAC ¶ 47.

Ahlstrom timely tendered the DNR Letter to Colony on October 3, 2025, asserting coverage under the same Insuring Agreements at issue in this litigation and invoking the Policy's "Multiple Policy Periods" provision (Section IV.H) on the ground that the DNR Letter arises from "related . . . or repeated **pollution condition(s)**" as the previously tendered *Rougeau* claim. FAC ¶¶ 62, 65, 73, 76, 83, 86, 100. Colony denied coverage on January 7, 2026, citing and discussing only "the reasons previously conveyed to Ahlstrom . . . via correspondence, and in . . . the coverage litigation." **Ex. A**, Colony's Jan. 7, 2026 Denial; *see also* FAC ¶¶ 13, 15, 91–94, 110.

## <u>LEGAL STANDARD</u>

Summary judgment under Fed. R. Civ. P. 56(a) is appropriate for deciding whether "an insurance company owes a duty to defend." *Nowacki v. Federated Realty Grp., Inc.*, 36 F. Supp. 2d 1099, 1103 (E.D. Wis. 1999); *see also EMCASCO Ins. Co. v. N. Metal Fab., Inc.*, 715 F. Supp. 3d 1103, 1109 (W.D. Wis. 2024) (Conley, J.). To obtain summary judgment on the duty to defend, a policyholder need only demonstrate that the allegations of the underlying claim give rise to *any possibility* of coverage, irrespective of the merits of the claims, because "[t]he duty to defend is necessarily broader than the duty to indemnify[.]" *Fireman's Fund Ins. Co. of Wis. v. Bradley Corp.*, 660 N.W.2d 666, 674 (Wis. 2003).

An insurer must defend whenever the allegations in the underlying claim, liberally construed and with "all reasonable inferences" drawn in the insured's favor, state facts giving rise to "arguable" coverage. *Id.* The analysis proceeds under Wisconsin's "four-corners" rule: courts compare the policy language to the allegations of the underlying complaint or demand, with "no exceptions[.]" *Water Well Sols. Serv. Grp., Inc. v. Consol. Ins. Co.*, 881 N.W.2d 285, 292–94, 297 (Wis. 2016).

"[I]f even one covered offense alleged in the underlying complaint, if proven, would give rise to recovery under the terms of the policy, the insurance company has a duty to defend" the entire suit. *W. Bend Mut. Ins. Co. v. Ixthus Med. Supply, Inc.*, 923 N.W.2d 550, 557 (Wis. 2019). "Any doubt about the duty to defend must be resolved in favor of the insured." *Scot. Guarantee Ins. Co. v. Dwyer*, 19 F.3d 307, 309 (7th Cir. 1994) (cleaned up). "If under *any plausible interpretation*, the complaint alleges liability covered by the policy," the Court "***must*** *find a duty to defend*." *Washington v. Krahn*, 440 F. Supp. 2d 911, 913 (E.D. Wis. 2006) (emphasis added). Once the insured makes this initial showing, "the burden shifts to the insurer to show that an exclusion"—which is "narrowly construed against the insurer"—"unambiguously precludes coverage[.]" *Day v. Allstate Indem. Co.*, 798 N.W.2d 199, 206 (Wis. 2011).

## ARGUMENT

The DNR Letter is a "**claim**," and alleges Ahlstrom is liable for potentially covered "**loss**," as those terms are defined in the Policy. Although the DNR Letter was sent after the Policy's expiration, it is covered under the Policy because it is a related "**claim**" to the *Rougeau* action and is thus deemed to have been made and reported at the same time as the *Rougeau* action. FAC ¶¶ 8–12, 55, 62, 73, 83, 100; Policy § IV.H, Ex. A to FAC (ECF 51-1) at 21. The allegations in the DNR Letter are predicated on the same discrete **pollution conditions** that underlie the allegations in the *Rougeau* Action; thus, they both give rise to potential coverage under several Insuring Agreements. FAC ¶¶ 62, 73, 83, 90, 96, 100. Finally, as with the *Rougeau* action, Colony cannot meet its burden to show that any Policy exclusion applies that would wholly and unambiguously preclude coverage for the DNR Letter.

*Id.* ¶¶ 64, 75, 85, 91. Thus, Colony has breached its duty to defend Ahlstrom in connection with the *Rougeau* action *and* the DNR Letter—and that breach is ongoing. *Id.* ¶¶ 65, 76, 86, 88, 90, 94, 101–02.

## I. The DNR Letter Is a "Claim" for Potentially Covered "Loss" Under the Policy.

The Supreme Court of Wisconsin has made clear, in the context of commercial general liability policies, that "an insured's costs of restoring and remediating damaged property . . . are covered damages," and that "receipt of a potentially responsible party (PRP) letter from the EPA or an equivalent state agency" triggers the insurer's duty to defend. *Johnson Controls, Inc. v. Emps. Ins. of Wausau*, 665 N.W.2d 257, 263–64 (Wis. 2003). This conclusion is even stronger under the Policy at issue in this case, which specifically covers "environmental and remediation liability." PFOF ¶ 5.

The Policy defines "**claim**" as "a written notice, demand or assertion of a legal right alleging liability or responsibility on the part of an **insured** for **loss**," and further provides that "**[c]laim** includes suits and governmental or regulatory actions filed against an **insured**." PFOF ¶ 21. The DNR Letter is a written demand by a state regulatory agency alleging Ahlstrom's liability or responsibility for remediation of environmental contamination arising from its landspreading of **waste** from the Rhinelander Site. FAC ¶¶ 5–6, 11, 40–48, 62–63, 97. It is therefore a "**claim**" as defined by the Policy.

The Policy covers "**loss**," which includes "**cleanup costs**." PFOF ¶ 23. "**Cleanup costs**," in turn, includes "reasonable and necessary expenses . . . to investigate, remove, treat, remediate, neutralize or immobilize a **pollution condition**" to the extent "required by **environmental laws**[.]" Policy § VIII.C, Ex. A to FAC (ECF 51-1) at 27. The DNR Letter asserts Ahlstrom is a "responsible party" under Wisconsin law and must take "appropriate response actions to address contamination, including requirements for emergency and interim actions, public information, site investigations, remedy selection, design and operation of remedial action systems, and case closure." Ex. C to FAC (ECF 51-3) at 1–2. The DNR Letter thus alleges that Ahlstrom is liable for "**loss**" in the form of "**cleanup costs**" as defined by the Policy. PFOF ¶ 23; FAC ¶¶ 48, 54(d), 54(f), 62, 73, 84, 93, 97.

## II. The DNR Letter Is a Related "Claim" Deemed First Made During the Policy Period.

Section IV.H of the Policy provides that "[i]f a **claim** is first made against an **insured** and first reported to us during the **policy period**, then all claims arising out of the same, related, continuous or repeated **pollution condition(s)** that are first made against an **insured** and first reported to us" after the Policy's expiration "shall be deemed to have been first made against an **insured** and first reported to us during this **policy period**."[5] FAC ¶ 55; Policy § IV.H, Ex. A to FAC (ECF 51-1) at 21.

The *Rougeau* action claim satisfies the first prong of Section IV.H: it was "first made against an **insured** and first reported to [Colony] during the **policy period**." PFOF ¶¶ 7, 66–68. The DNR Letter satisfies the second prong: it indisputably arises from the "same, related, continuous or repeated **pollution condition(s)**" as the *Rougeau* action. FAC ¶¶ 8, 11–12, 55, 62, 73, 83, 100. Both the *Rougeau* action and the DNR Letter involve the same PFAS contamination allegedly arising from the same conduct by Ahlstrom and its predecessors: multiple instances of landspreading industrial **waste** from the Rhinelander Site onto multiple agricultural fields. *Id.* ¶¶ 62–63, 73–74, 83–84.

Because the DNR Letter **claim** and the *Rougeau* action **claim** arise out of the same **pollution condition(s)**, Section IV.H mandates that the DNR Letter is "deemed" to have been first made against Ahlstrom and reported to Colony during the **Policy period**, satisfying the "claim first made" element of each Insuring Agreement discussed below. Moreover, because both **claims** arise from "related . . . or repeated **pollution condition(s)**," only one self-insured retention applies, PFOF ¶ 30, and Ahlstrom has already satisfied it, PFOF ¶¶ 94–100. Colony's duty to defend has therefore been triggered and breached, and that breach is ongoing. PFOF ¶ 28; FAC ¶¶ 72, 76, 86, 94.

---

[5] Section IV.H's requirement that the later claim be made and reported during the period of "a subsequent policy issued by [Colony] to [Ahlstrom] providing substantially the same coverage as this Policy" is satisfied. Colony issued a subsequent policy to Ahlstrom for the period from April 12, 2024 to April 12, 2027, with the same policy number and providing substantially the same coverage as the Policy at issue. *See* FAC ¶ 100.

## III. The DNR Letter Triggers Potential Coverage Under Three Insuring Agreements.

"The duty to defend arises when there is arguable, as opposed to actual, coverage," because "the nature of the claim alleged" is what "triggers the duty to defend[.]" *Johnson Controls, Inc. v. London Mkt.*, 784 N.W.2d 579, 586 (Wis. 2010). Like the *Rougeau* action, the DNR Letter alleges facts that *potentially* trigger coverage, and thus *actually* trigger Colony's duty to defend, under Insuring Agreements E (Non-Owned Disposal Site Liability), B.2 (New Pollution Conditions Liability), and F (Transportation Pollution Liability). Colony's refusal to honor its obligations as to either the *Rougeau* suit or the DNR Letter constitutes a breach of the Policy and exposes Colony to liability for bad faith.

### A. Insuring Agreement E: Non-Owned Disposal Site Liability.

Insuring Agreement E covers "**cleanup costs** resulting from a **pollution condition** on, under or migrating from a **non-owned disposal site**[.]" PFOF ¶ 9. As explained in Ahlstrom's previous briefing, the farmland sites at which **waste** from the Rhinelander Site was applied via landspreading are "**non-owned disposal sites**."[6] PFOF ¶ 10; ECF 28 at 20–28; ECF 33 at 15–18; ECF 37 at 6–8. The DNR Letter confirms that permits issued by WPDES (Wisconsin Pollutant Discharge Elimination System) authorized this landspreading. Ex. C to FAC (ECF 51-3) at 2; FAC ¶ 42.

The DNR Letter alleges that landspreading of **waste** from the Rhinelander Site onto agricultural fields "go[es] back to at least 1996." Ex. C to FAC (ECF 51-3) at 1. This parallels the *Rougeau* action's allegations that landspreading occurred for "decades until the present" and "[o]ver the course of decades." PFOF ¶¶ 45, 56. As Ahlstrom explained previously, these allegations satisfy the Policy's requirement that the relevant **pollution conditions** "first commenced" on or after the **retroactive date** (December 7, 2008 for Insuring Agreement E).[7] Accordingly, by failing to defend

[6] Because the DNR is not, to Ahlstrom's knowledge, an owner, operator, or contractor of any farmland site at issue, the DNR Letter satisfies the requirement of Coverage E that the **claim** be brought by someone other than the owner, operator, or contractor of the "**non-owned disposal site**." *See* PFOF ¶ 9; ECF 28 at 24–25.
[7] *See* ECF 28 at 25–28; ECF 33 at 18–26; ECF 37 at 8–13.

Ahlstrom under Insuring Agreement E, Colony has breached the Policy. PFOF ¶¶ 92–93; FAC ¶¶ 63–65; *Liebovich v. Minn. Ins. Co.*, 728 N.W.2d 357, 360–61, 365 (Wis. Ct. App. 2007).

**B. Insuring Agreement B.2: New Pollution Conditions Liability.**

Insuring Agreement B.2 covers "**cleanup costs** beyond the boundaries of a **scheduled site** resulting from a **pollution condition** migrating from or through a **scheduled site**." PFOF ¶ 13. Ahlstrom previously explained how the PFAS contamination alleged in the *Rougeau* action migrated from the Rhinelander Site to the surrounding farmland—precisely the scenario B.2 addresses. *See* ECF 28 at 28–30; ECF 33 at 30–32; ECF 37 at 21–23. As explained in Section II above, the PFAS contamination alleged in the DNR Letter arises from the same multiple, distinct **pollution conditions** alleged in the *Rougeau* action. And, as explained in Section III.A above and in Ahlstrom's previous briefing, the allegations in the DNR Letter *and* in the *Rougeau* action give rise to the possibility that **pollution conditions** occurred on or after the **retroactive date** applicable to Insuring Agreement B.2, April 7, 2021.[8] The *possibility* of coverage is sufficient to trigger Colony's duty to defend. *Bradley*, 660 N.W.2d at 673–74. By failing to undertake its defense obligations as to the *Rougeau* action *and* the DNR Letter, Colony has breached the Policy.

**C. Insuring Agreement F: Transportation Pollution Liability.**

Insuring Agreement F covers "**cleanup costs** resulting from a **pollution condition** that is caused by **transportation**." PFOF ¶ 16. "**Transportation**" means "movement by **conveyance** by the **insured** . . . of . . . **waste** beyond the boundaries of any **scheduled site**." PFOF ¶ 17. The DNR Letter describes **waste** transported from the Rhinelander Site and applied to agricultural fields—i.e., movement of **waste** beyond the "**scheduled site**" boundaries. Ex. C to FAC (ECF 51-3) at 2; FAC ¶¶ 83–84. The retroactive date is December 7, 2008 (PFOF ¶¶ 12, 19), and the same "first commenced" analysis described above and in the Insuring Agreement F analysis in Ahlstrom's prior

---

[8] *See* FAC ¶¶ 72–74; ECF 28 at 30; ECF 33 at 18–26; ECF 37 at 8–13.

briefing applies.[9] Because the DNR Letter's allegations at least arguably meet Insuring Agreement F's requirements, Colony has a duty to defend, which it has breached. *See Tokio Marine Specialty Ins. Co. v. Altom Transp., Inc.*, 618 F. Supp. 3d 791, 796–97 (N.D. Ill. 2022)[10] (concluding duty to defend attached where underlying allegations potentially fell within environmental policy's transportation coverage).

## IV. Colony Cannot Meet Its Heavy Burden to Establish Any Exclusion Applies Such That There Is No Possibility of Coverage for the DNR Letter Under the Policy.

Once Ahlstrom demonstrates, which it has, that at least one of the Insuring Agreements potentially covers the DNR Letter (as well as the *Rougeau* action), Colony must defend—unless Colony can carry its burden to unambiguously prove that, viewing the facts liberally in favor of coverage, the underlying allegations provide no basis for potential coverage or are otherwise explicitly and specifically excluded. *Air Eng'g, Inc. v. Indus. Air Power, LLC*, 828 N.W.2d 565, 569–70, 574 (Wis. Ct. App. 2013); *Day*, 798 N.W.2d at 206, 217. To that end, "exclusions are to be narrowly construed against an insurer." *Frost ex rel. Anderson v. Whitbeck*, 654 N.W.2d 225, 230 (Wis. 2002). Here, Colony has not and cannot prove that the Policy excludes any possibility of coverage. As to the *Rougeau* action, Colony has raised three main arguments against coverage—none of which definitively negate its duty to defend under the Policy. PFOF ¶¶ 69–75; FAC ¶¶ 64, 75, 85, 91. Because the *Rougeau* action and the DNR Letter are treated as one "**claim**" under the Policy, Ahlstrom briefly addresses why none of Colony's arguments foreclose coverage or defeat Colony's duty to defend.

### A. The DNR Letter Alleges, And Thus Supports the Inference, That the Farmland Sites Were Properly Licensed to Receive Waste from the Rhinelander Site.

Colony contends the farmland sites are not "**non-owned disposal sites**" because the *Rougeau* action, in Colony's view, does not sufficiently allege that the landspreading was "properly licensed and permitted." PFOF ¶¶ 71, 87. Ahlstrom demonstrated that the *Rougeau* action's allegations are more

[9] FAC ¶¶ 82–84; ECF 28 at 31–34, 37; ECF 33 at 18–29; ECF 37 at 8–13, 17–21.

[10] *Aff'd*, No. 23-1443, 2024 WL 808059 (7th Cir. Feb. 27, 2024) (applying Illinois law).

than sufficient to establish that the landspreading was "properly licensed and permitted." PFOF ¶¶ 55, 91; ECF 28 at 20–24, 35–36; ECF 33 at 15–18; ECF 37 at 6–8. The DNR Letter explicitly confirms that "WPDES permits issued to the [Rhinelander] facility allow for land spreading." Ex. C to FAC (ECF 51-3) at 2. This statement defeats Colony's position with respect to both the DNR Letter *and* the *Rougeau* action because, as noted above, they are treated as a single **claim**.

Colony will surely highlight a statement in the DNR Letter that "no WPDES permits issued to the Facility authorize the discharge of PFAS." *Id.* But this statement does not help Colony. *First*, the Policy does not require a permit authorizing discharge of a *contaminant*; it requires only that a **non-owned disposal site** be "properly licensed and permitted . . . to accept ***waste*** generated from a **scheduled site** . . . at the time of" acceptance. PFOF ¶ 10 (emphasis added). "**Waste**" means "materials to be disposed, recycled, reconditioned or reclaimed." *Id.* ¶ 27. Whether discharge of *PFAS* was authorized is thus irrelevant for coverage purposes; all that is required is that permits to discharge ***waste*** from the Rhinelander Site were properly issued, and they were. Ex. C to FAC (ECF 51-3) at 2. *Second*, the statement addresses whether the WPDES permits allow Ahlstrom to qualify for a safe harbor in the Spills Law exempting it from certain reporting and penalty requirements. *Id.* As such, it has no bearing on what the Policy requires or whether a potential for coverage under the Policy exists.

### B. The DNR Letter's Allegations Establish the Possibility that Pollution Conditions First Commenced After the Policy's Retroactive Dates.

Colony argues that all the **pollution condition(s)** at issue in both the *Rougeau* action and the DNR Letter "first commenced" prior to the **retroactive dates**. PFOF ¶¶ 72, 84. But nothing in the DNR Letter lends any support to Colony's position. *Supra* Section II. While the DNR Letter notes that the practice of landspreading **waste** from the Rhinelander Site dates back to at least 1996, it contains no allegation that the landspreading was a continuous, unbroken activity which "first commenced" before the Policy's **retroactive dates**. It is also entirely consistent with Ahlstrom's position that each individual act of landspreading—which took place on a specific date and at a specific

field—is divisible from the others, such that a separate **pollution condition** "first commenced" each time a delivery of **waste** began to flow out of the truck in which it was transported, and ceased when the truck was empty. Each act of landspreading is thus a separate "**pollution condition**," many of which "first commenced" after the **retroactive dates**. *See Konell Constr. & Demolition Corp. v. Valiant Ins. Co.*, No. CV03-412-MO, 2006 WL 1360956, at *3–4 (D. Or. May 15, 2006) (applying Oregon law) (applying a policy's definition of "pollution incident" separately to "each delivery of a dump truck load of contaminated soil" because each delivery "[wa]s naturally divisible from the others").

**C. Colony Cannot Prove the Known Pollution Conditions Exclusion Applies to Avoid Its Duty to Defend, Particularly Where Permits Were Issued.**

The Known Pollution Conditions Exclusion bars coverage only for **pollution conditions** "known by a responsible insured" prior to the Policy's inception. PFOF ¶ 33. Colony bears the burden of proving Ahlstrom had actual prior knowledge of the *specific* **pollution conditions** underlying the DNR Letter. *See Day*, 798 N.W.2d at 217. The DNR Letter provides no support for this proposition. Colony also has not conducted the requisite investigation of Ahlstrom's claims, so it cannot satisfy its burden at the duty-to-defend stage to prove that the Known Pollution exclusion "unambiguously" applies to avoid its defense obligations. *Id.*; *see also Air Eng'g*, 828 N.W.2d at 574–75 (insurer failed to prove "knowing violation" exclusion applied to avoid duty to defend).

## CONCLUSION

Ahlstrom respectfully requests summary judgment declaring that Colony: (1) has an ongoing duty to defend Ahlstrom in connection with the DNR Letter and the *Rougeau* action; (2) has breached that duty; (3) is liable for all costs Ahlstrom incurs in responding to the DNR Letter and the *Rougeau* action and in establishing coverage, including cleanup costs, defense costs, and attorneys' fees; and (4) has waived and is estopped from asserting coverage defenses.[11]

[11] *See Liebovich*, 728 N.W.2d at 360–61 (explaining that an insurer that unilaterally refuses to defend is estopped from contesting coverage and is liable for defense costs, damages, and attorneys' fees).

**Dated**: August 4, 2026

Respectfully submitted,

BARNES & THORNBURG LLP

By: *_/s/ Kevin B. Dreher_*
Kevin B. Dreher (*admitted by petition*)
Brian E. Foster (*admitted by petition*)
Mary Catherine Pachciarz (*admitted by petition*)
Mariana Renke (*admitted pro hac vice*)
BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, IL 60606-2833
Phone: (312) 357-1313
kdreher@btlaw.com
bfoster@btlaw.com
marycate.pachciarz@btlaw.com
mariana.renke@btlaw.com

*Counsel for the Ahlstrom Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 4, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Kevin B. Dreher*
Kevin B. Dreher